UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X
UNITED STATES OF AMERICA,

    - against –                    **MEMORANDUM AND ORDER**

MICHAEL WILLIAMS,                      00 CR 1008 (NRB)

        Defendant.

------------------------------X

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

    Before the Court is an application by Michael Williams ("Williams" or "defendant") to reduce his life sentence pursuant to 18 U.S.C. § 3582(c)(1)(A), ECF No. 396. The Government opposes defendant's motion.[1] At trial, the Government sought the death penalty against the defendant for his role in a February 1996 triple homicide. Williams is fifty-two years old, has served nineteen years of his sentence thus far, and is currently incarcerated at USP Hazelton in Bruceton Mills, West Virginia.[2] For the following reasons, defendant's motion is denied.

---

[1] In reviewing the motion, the Court has considered the defendant's initial brief and attachments (ECF No. 396), the Government's opposition and exhibits (ECF No. 397), the defendant's reply brief and attachment (ECF No. 398), and the defendant's amendment to the motion for compassionate release and attachments (ECF No. 400).

[2] See Federal Bureau of Prisons, Inmate Locator, https://www.bop.gov/mobile/find_inmate/byname.jsp#inmate_results (last visited December 10, 2024).

**BACKGROUND**

**I.   Factual Background**

Williams was a leader of the "Torres Organization," an extensive narcotics operation based in the greater New York metropolitan area. Presentence Investigative Report ("PSR") dated August 15, 2005, ¶¶ 26, 72. In the mid-1990s, defendant worked alongside his father and uncle to prepare and transport large quantities of crack cocaine from the Bronx to Western Pennsylvania. PSR ¶¶ 31, 32, 43, 44. Together, the three Williamses were responsible for distributing hundreds of kilograms of crack cocaine. Id. ¶ 44.

Williams murdered three individuals in furtherance of the Torres Organization's enterprise. In February 1996, defendant arranged to meet Robert James and Timothy Moore, crack dealers in Pittsburgh who owed the Torres Organization money. Id. ¶¶ 36-37. James and Moore brought along Moore's 19-year-old cousin, Joel Moore, in their vehicle while Williams' father accompanied him. Id. Once the meeting was underway, Williams shot Timothy Moore in the face. Id. Williams, together with his father, then emptied their weapons firing at the vehicle. Id. All three occupants in the vehicle were killed. Id.

Defendant also conspired unsuccessfully to murder others who threatened the Torres Organization's profits. In October 1995,

Williams conspired to murder Victor Mercado, who was stealing ten percent of every kilogram of crack cocaine that he allowed the Organization to stash at his apartment. Id. ¶ 34. A Torres Organization associate shot Mercado five times in the chest, leg, and head, although he ultimately survived. Id. In January 1996, Williams conspired to kill Bernard Williams. Id. ¶ 35. Finding him in a car with another individual, Carlos Bryant, defendant fired into the windshield more than ten times, striking Bryant five times and Bernard Williams once. Id. Both survived. Id.

Williams obstructed an investigation into the triple homicide and attempted to escape from custody. PSR ¶¶ 45, 112-115. Williams directed his girlfriend to create false documentation stating that he had been at a funeral in New York on the night of the murders. Id. ¶ 45. Additionally, in April 1997, Williams hid a rope of bedsheets designed to help another inmate escape from prison. Id. ¶¶ 112-113. And in November 1997, Williams hid in another inmate's cell, tied a rope of bedsheets to the inmate's bed, and removed a security bar from the window. Id. ¶¶ 115-116. The other inmate fell sixteen stories to his death after using the rope of bed sheets to unsuccessfully lower himself down the side of the building. Id.

**II.  Trial and Sentencing**

In 2005, Williams was tried pursuant to a superseding indictment containing fifteen counts: racketeering, in violation of 18 U.S.C. § 1962(c) (Count One); racketeering conspiracy, in violation of 18 U.S.C. § 1962(d) (Count Two); conspiracy to commit murder in aid of racketeering activity, in violation of 18 U.S.C. § 1959(a)(5) (Counts Three and Four); murder in aid of racketeering activity, in violation of 18 U.S.C. §§ 2, 1959(a)(1) (Counts Five through Seven); conspiracy to distribute narcotics, in violation of 21 U.S.C. § 846 (Count Eight); murder while engaged in a narcotics conspiracy, in violation of 18 U.S.C. § 2 and 21 U.S.C. § 848(e)(1)(A) (Counts Nine through Eleven); use of a firearm during and in relation to a drug trafficking crime or crime of violence (specifically, murder), in violation of, 924(j) (Counts Twelve through Fourteen); and conspiracy to launder money derived from narcotics trafficking, in violation of 18 U.S.C. § 1956(h) (Count Fifteen).

At trial, the Government sought the death penalty against the defendant for his role in the February 1996 triple homicide. See United States v. Williams, 506 F.3d 151, 154 (2d Cir. 2007); ECF No. 396 at 2. As a result, the defendant was appointed two counsel, one of whom was "learned in the law applicable to capital cases." 18 U.S.C. § 3005.  On May 6, 2005, following a six-week trial, a

jury found Williams guilty on all counts except Count Four and determined that he should not receive the death penalty.  ECF Nos. 196, 396 at 3.

Williams was sentenced to life in prison on August 17, 2005. See ECF Nos. 195, 196.  His conviction on Counts Five through Seven (murder in aid of racketeering activity) required mandatory life sentences on each count.  See id.; 18 U.S.C. § 1959(a)(1). Probation noted that this was "the appropriate sentence" because Williams "has displayed a complete disregard for the lives of others and has engaged in the most violent and deleterious criminal offenses plaguing society today."  PSR at 33.

**III. Post-Sentencing Procedural History**

Williams has continued to challenge his conviction and sentence over the years.  On October 23, 2007, the Second Circuit affirmed Williams' conviction and sentence.  United States v. Williams, No. 05-6036, 2007 WL 3105760 (2d Cir. Oct. 23, 2007) (summary order); United States v. Williams, 506 F.3d 151 (2d Cir. 2007).  Williams' petition for writ of certiorari to the Supreme Court was denied on March 24, 2008.  Williams v. United States, 552 U.S. 1290 (2008).  In July 2009, the defendant filed a habeas petition to vacate his sentence, ECF No. 230, which the Court denied, ECF No. 268.  In November 2011, the defendant moved for a sentence reduction pursuant to 18 U.S.C. § 3582, ECF No. 273, which

the Court also denied, ECF No. 280, and the Second Circuit summarily affirmed, ECF No. 291. In 2018, the defendant sought leave to file a successive habeas motion, but the Second Circuit denied his petition. ECF No. 308. In 2022, the defendant again sought leave to file a successive habeas petition and again the Second Circuit denied the application. ECF No. 372.

**IV. Bureau of Prisons Application and the Instant Motion**

On July 24, 2023, the defendant submitted a "Request for Reduction in Sentence Form" to the Bureau of Prisons. ECF No. 397, Exhibit D ("BOP Form"); see also ECF No. 398, Attachment (same). Defendant noted that he had a "Debilitated Medical Condition," and took "medication for a heart condition, high blood pressure, high cholesterol and . . . the Ozempic shot one time per week." BOP Form at 1. The defendant stated that if released, he would "[t]ake care of my sister-in-law whom [sic] is very sick." Id. at 2. Under the section entitled "[a]ny additional information you wish to be considered," defendant wrote that "[a]s of this year, I have been incarcerated for over 27 years. Also, due to COVID, for the past '3 1/2 years,' prison conditions have been much more harsh than it was previously." Id. The Government represents that the BOP did not respond to defendant's request. See ECF No. 397 at 4.

On December 21, 2023, defendant submitted his motion for

-6-

compassionate release under 18 U.S.C. § 3582(c)(1)(A).  ECF No. 396 ("Def. Br.").  In this motion, Williams claims there are multiple extraordinary and compelling reasons for modifying his sentence, namely: (1) his medical conditions and the impact of COVID-19 on those conditions, Def. Br. at 1, 13, 23; (2) a desire to help his grandson, who has autism, id. at 23; (3) objections to sentencing determinations, id. at 1, 13-14; (4) a trial penalty, i.e., his punishment for exercising his constitutional right to a jury trial, id. at 1-2; (5) that he was not sentenced under an advisory guidelines scheme, id. at 1, 7; (6) his "unusually long" life sentence in light of his relative "youth" at the time of the offense, id. at 1, 14-22, 25; and (7) that he has been rehabilitated and is unlikely to reoffend, id. at 4-5, 10-11, 18, 23-25.

On November 28, 2024, defendant submitted an amendment to his motion for compassionate release.  ECF No. 400.  In that amendment, he informs the Court that a family member has passed away unexpectedly and now the defendant's daughter is the "sole caregiver" of the defendant's grandson.  Id. at 1.  He seeks to provide care for his minor grandson and adult daughter.  Id. at 1-2.

## LEGAL STANDARD

A court may reduce a defendant's term of imprisonment under 18 U.S.C. § 3582(c)(1)(A) "only if three conditions are in place." United States v. Keitt, 21 F.4th 67, 73 (2d Cir. 2021) (per curiam). First, the defendant must have "fully exhausted all administrative" remedies before moving for compassionate release. 18 U.S.C. § 3582(c)(1)(A). Next, the defendant must demonstrate that "extraordinary and compelling reasons warrant" a sentence reduction. Id. § 3582(c)(1)(A)(i). Lastly, the district court must consider "the factors set forth in" 18 U.S.C. § 3553(a) "to the extent that they are applicable." Id. § 3582(c)(1)(A).

"If any one requirement is not satisfied, the district court may deny the motion without considering the remaining requirements." United States v. Hunter, No. 21-1773, 2022 WL 2288688, at *1 (2d Cir. June 24, 2022) (citations omitted); but see United States v. Jones, 17 F.4th 371, 374-75 (2d Cir. 2021) (per curiam) (encouraging district courts to consider all three requirements to aid the Second Circuit's appellate review).

## DISCUSSION

We examine each of the foregoing conditions seriatim.[3]

---

[3] Although Williams' motion is brought pro se and is therefore to "be construed liberally and interpreted to raise the strongest arguments [it] suggest[s]," Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotations omitted), the defendant, in making the motion, "bears the burden of proving that he is entitled to relief under 18 U.S.C. § 3582."

I.   **Administrative Exhaustion**

Williams exhausted his remedies before bringing the instant compassionate release motion. A defendant satisfies the administrative exhaustion requirement if, before moving for compassionate release, the defendant "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion [for compassionate release] on the [defendant's] behalf" or shows "the lapse of 30 days from the receipt of such a request by the warden of the [defendant's] facility." 18 U.S.C. § 3582(c)(1)(A). Williams, in his request to the Bureau of Prisons, raised several reasons for his release: his medical circumstances, his family circumstances, and the length of his sentence. See BOP Form. These reasons are sufficiently similar to those in his motion to satisfy the exhaustion requirement.

II.  **Extraordinary And Compelling Reasons**

Any defendant seeking a reduction in his sentence "must demonstrate that his proffered circumstances are indeed 'extraordinary and compelling' such that, . . . a sentence reduction . . . would not simply constitute second-guessing of the sentence previously imposed." Keitt, 21 F.4th at 71; see also 18 U.S.C. § 3582(c)(1)(A)(i). The Sentencing Commission has defined

---

United States v. Mungin, No. 97 Crim. 1105 (LAP), 2024 WL 2830851, at *4 (S.D.N.Y. June 3, 2024) (citations omitted).

"extraordinary and compelling" conditions to include "Medical Circumstances of the Defendant," "Age of the Defendant," "Family Circumstances of the Defendant," "Victim of Abuse," "Other Reasons," and "Unusually Long Sentence." U.S.S.G. §1B1.13(b).[4]

### a. Medical Circumstances of the Defendant

First, Williams asserts that his medical circumstances rise to the level of "extraordinary and compelling." Def. Br. at 1, 13, 23. The Sentencing Commission outlines four scenarios where a defendant's medical circumstances may be "extraordinary and compelling," namely when: (A) the defendant is "suffering from a terminal illness (i.e., a serious and advanced illness with an end-of-life trajectory)"; (B) the defendant's condition "substantially diminishes the ability of the defendant to provide self-care . . . and from which he or she is not expected to recover"; (C) the defendant's condition "requires long-term or specialized medical care that is not being provided"; or (D) an outbreak of infectious disease "cannot be adequately mitigated in a timely manner." U.S.S.G. §1B1.13(b)(1).

---

[4] An earlier version of section 1B1.13 was found to be non-binding on district courts deciding motions brought by defendants. See United States v. Brooker, 976 F.3d 228, 236 (2d Cir. 2020). However, through amendments effective as of November 1, 2023, the Sentencing Commission fixed the issue identified in Brooker, and "made it clear that section 1B1.13 now applies when district courts consider motions made by defendants." United States v. Rivera Rodriguez, No. 12 Crim. 269-2 (JGK), 2024 WL 4355031, at *2 (S.D.N.Y. Sept. 27, 2024) (collecting cases). While the Government addresses each factor in its opposition, Opp. 9-12, the Court finds no need to do so where the defendant has not raised an argument on that factor, such as "Age of the Defendant," "Victim of Abuse," and "Other Reasons." U.S.S.G. §1B1.13(b).

Defendant's medical circumstances do not fall under any of the four scenarios outlined in the Sentencing Commission's binding guidance.  According to defendant's medical records, Mr. Williams is a 52-year-old African American male with a past medical history of type II diabetes mellitus, hypertension, old myocardial infarction, and stage III kidney disease, among other ailments. See ECF No. 397, Ex. B at 1, 8.  Defendant is not suffering from a "terminal illness[,]" nor is his ability to provide self-care "substantially diminish[ed]," as "long term" medical care is being provided to him. U.S.S.G. §1B1.13(b)(1)(A), (B), (C).  He is receiving "medication for a heart condition, high blood pressure, high cholesterol and . . . the Ozempic shot one time per week." BOP Form.  And, at his latest visit to medical staff, it was defendant, not BOP, who was "noncompliant with diabetes management/control."  Ex. B at 1.  Defendant stated that he would "exercise more and get [his] numbers where they [needed to] be." Id.

The addition of the COVID-19 pandemic is not enough to transform Williams' arguments into extraordinary and compelling circumstances.  As of October 9, 2024, there are no positive cases of COVID-19 among inmates at FCC Hazelton.[5]

---

[5]  See Inmate COVID-19 Data, Federal Bureau of Prisons, https://www.bop.gov/about/statistics/statistics_inmate_covid19.jsp (last visited December 10, 2024).  FCC Hazelton has multiple facilities, including USP Hazelton where Mr. Williams is incarcerated.

-11-

**b. Family Circumstances of the Defendant**

Next, Williams contends that his family circumstances are an "extraordinary and compelling" reason for reducing his sentence. In his amendment to the motion, Williams informs the Court that a relative has passed away, presumably the sister-in-law he spoke of in his original application as "very sick," and he hopes to assist his daughter, a single parent, in caring for her son, who has autism. ECF No. 400 at 1-2; BOP Form at 2; Def. Br. at 23.

While these plans are commendable, they do not constitute a "extraordinary and compelling" circumstance that warrants granting compassionate release, pursuant to U.S.S.G. 1B1.13(b)(3) ("Family Circumstances of the Defendant"). Family circumstances "can rise to the level of extraordinary and compelling where the defendant's adult child is incapable of self-care because of a mental or physical disability or medical condition and that child's caregiver has died or become incapacitated." United States v. Olangian, No. 12 Crim. 798 (LAP), 2024 WL 4372135, at *5 (S.D.N.Y. Oct. 2, 2024) (citing U.S.S.G. 1B1.13(b)(3)(A)). That is not the case here. Defendant has neither alleged, nor established, that his adult child is incapable of self-care. See ECF No. 400.

In instances "involving any other immediate family member" who is not the defendant's child, spouse, partner, or parent, the defendant must establish he "would be the only available caregiver

-12-

for such family member or individual." U.S.S.G. 1B1.13(b)(3)(D). Williams has not done so here, instead acknowledging that his daughter is the caregiver for his grandson. See ECF No. 400 at 1; United States v. Lindsey, No. 13 Crim. 271 (LTS), 2021 WL 37688, at *3 (S.D.N.Y. Jan. 4, 2021) ("[C]ourts generally require a showing of evidence from several sources indicating that the defendant is the only available caregiver[.]"). Without such proof, a defendant's separation from his family cannot even be considered "extraordinary and compelling" and is instead a "sad and inevitable consequence[] of incarceration." United States v. Sprull, No. 18 Crim. 665 (PKC), 2024 WL 4528126, at *4 (S.D.N.Y. Oct. 18, 2024) (citations and internal quotation marks omitted).

### c. Unusually Long Sentence

Williams argues that his sentence is overly long for four reasons: (1) the Court erred in its sentence determinations, Def. Br. at 1, 13-14; (2) he was punished for exercising his constitutional right to a jury trial, id. at 1-2; (3) he was not sentenced under an advisory guidelines scheme, id. at 1, 7; and (4) he was a relative "youth" at the time of the offense, id. at 1, 14-22, 25.

Under the "Unusually Long Sentence" prong of §1B1.13(b), a district court may grant relief if (a) a defendant who "received an unusually long sentence" "has served at least 10 years"; (b)

the court has fully considered "the defendant's individualized circumstances"; and (c) "a change in the law" has "produce[d] a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed."  U.S.S.G. §1B1.13(b)(6).

As an initial matter, the length of Williams' sentence is not unusually long in light of his conduct, the mandatory minimums, and individualized circumstances.  His conviction on Counts Five through Seven (murder in aid of racketeering activity) resulted in the imposition of three mandatory life sentences.  ECF Nos. 195, 196; United States v. James, 239 F.3d 120, 127 (2d Cir. 2000) ("18 U.S.C. § 1959(a)(1) carries a mandatory minimum sentence of life in prison."); United States v. Smith, No. 21-2487, 2024 WL 276738, at *4 (2d Cir. Jan. 25, 2024) (same).  Counts Nine through Eleven (murder while engaged in a narcotics conspiracy) carried a mandatory minimum of 20 years on each count.  See 21 U.S.C. § 848(e)(1)(A); United States v. Fletcher, No. 20-1180, 2021 WL 1823277 (2d Cir. May 7, 2021) (finding the First Step Act did not modify this mandatory minimum).  This Court today would be required to sentence a defendant convicted of even one similar count to twenty years.  Yet here, where the defendant has been convicted of conduct that triggers three mandatory life sentences and three

mandatory twenty-year sentences, the defendant asks the Court for a sentence reduction after nineteen years of incarceration.[6]

Next, despite Williams' claims, there have been no changes in the law that would produce a "gross disparity" between defendant's current sentence and his sentence if he were convicted today.

Williams first attacks supposed errors in his sentence. He claims that he can present objections to his sentencing guidelines and that he was punished for exercising his constitutional right to a jury trial. See Def. Br. 1-2, 13. These arguments do not concern a change in law. A motion for compassionate release is "not an opportunity to second guess or to reconsider the sentencing court's original decision." United States v. Roney, 833 F. App'x 850, 854 (2d Cir. 2020) (internal quotations omitted); see also United States v. Jacques, No. 20-3276, 2022 WL 894695, at *2 (2d Cir. Mar. 28, 2022) ("[C]laims regarding the validity of [a defendant's] conviction and sentence . . . [a]re not a proper basis for a § 3582(c)(1)(A) motion."); United States of Am., Appellee, v. Edgar Marino Sanchez, Defendant-Appellant., No. 23-7777, 2024 WL 4647668, at *2 (2d Cir. Nov. 1, 2024) (same); United States v. Jenkins, 50 F.4th 1185, 1200 (D.C. Cir. 2022) ("Legal errors at sentencing are neither extraordinary nor compelling.").

---

[6] Defendant contends he "has served almost 28- years of his sentence, he has been incarcerated since March 2nd, 1996," Def. Br. at 10, but he is improperly counting time served on separate state charges before he was sentenced in this matter on August 17, 2005, id. at 3; PSR at 1, ¶ 40; ECF No. 196.

In any event, neither argument has merit. As this Court has observed before, Williams' "Guidelines calculations were essentially irrelevant since [he was] facing mandatory life sentences." Williams v. United States, No. 00 Crim. 1008 (NRB), 2011 WL 3296101, at *18 (S.D.N.Y. July 28, 2011). "[N]or had he suffered a trial penalty because the sentence was statutorily mandated." United States v. Isaac, No. 22-2758, 2024 WL 1597614, at *1, 2 (2d Cir. Apr. 12, 2024) (affirming dismissal of compassionate release motion where defendant's "life sentence was driven by a statutory minimum, not a Guidelines calculation or the sentencing court's exercise of discretion").

Williams next claims that he was sentenced before the sentencing guidelines were considered advisory. Def Br. at 1, 7. This assertion is belied by the factual record. The Supreme Court's decision in United States v. Booker, which ruled that the Guidelines were advisory, was issued on January 12, 2005. 543 U.S. 220 (2005). Williams was sentenced on August 17, 2005, ECF No. 196, several months after Booker's ruling. ECF No. 196.

Lastly, Williams claims that changes in the law concerning the sentencing of "youth" impact his sentence. Def Br. 18-22. Defendant cites the Supreme Court's decision in Miller v. Alabama, which held that "mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth

-16-

Amendment," 567 U.S. 460, 465 (2012), and Section 608 of the First Step Act, which defines "youth" as a "prisoner" "who was 21 years of age or younger at the time of the commission . . . of the criminal offense," First Step Act of 2018, Pub. L. No. 115-391, § 608(c), 132 Stat. 5194, 5220 (Dec. 21, 2018).[7]

Once again, the factual record eviscerates the defendant's argument. He was 23 years old, not 18 or 21, when he participated in the February 1996 triple homicide. See PSR at 2, ¶¶ 36-37.

**d. Rehabilitation**

Williams claims that "he has [been] rehabilitated and is ready to contribute to society." Def. Br. at 25.[8] The numerous letters written by Williams' wife, family, and friends convey that Williams has used his time in prison to better himself and mentor others. See Attachments to Def. Br., ECF No. 396.

---

[7] Neither citation is relevant. Mandatory life sentences for murders in aid of racketeering committed after the defendant turned eighteen do not violate the Eighth Amendment. See Cruz v. United States, 826 F. App'x 49, 52 (2d Cir. 2020). The cited Section of the First Step Act establishes a "pilot program[]" for "youth" and is irrelevant here. See United States v. Johnson, No. CR 98-00099-KD, 2021 WL 2750609, at *4n.2 (S.D. Ala. July 1, 2021) (citations omitted), aff'd, No. 21-12629, 2022 WL 17246763 (11th Cir. Nov. 28, 2022).

[8] Williams similarly claims he is "highly unlikely to reoffend or pose any threat to the community," Def. Br. at 11, but the Sentencing Commission's study on "The Effects of Aging on Recidivism Among Federal Offenders" undermines this claim. Williams is currently fifty-two years old, with a Criminal History Category of IV. PSR at 3, 32. Although it is true that defendants who are in their fifties have lower recidivism rates than younger defendants, the rearrest rate for men ages 50 to 59 at the time of release was 29.2%, which is essentially one in three defendants in that age range. U.S. Sentencing Comm'n, Effects of Aging on Recidivism Among Federal Offenders, Dec. 2017, at 24. Focusing on defendants with a Criminal History Category of IV, like Williams, the rearrest rate of those defendants age 50 to 59 is 51.6%. Id. at 25.

These efforts are laudable, and the Court does not wish to diminish them. However, "[r]ehabilitation . . . alone shall not be considered an extraordinary and compelling reason." United States v. Brooker, 976 F.3d 228, 238 (2d Cir. 2020) (alterations in original); see also U.S.S.G. §1B1.13(d) (same). While the Court appreciates and commends a defendant's efforts to rehabilitate himself, Williams' actions are not so extraordinary or compelling at this time to warrant a departure from the Court's original sentence for all the reasons set forth above.

**III. 18 U.S.C. § 3553(a) Factors**

Even assuming that Williams has demonstrated extraordinary and compelling reasons warranting reduction of his sentence, the application of the factors set forth in 18 U.S.C. § 3553(a) strongly counsel against his release. Those factors include "the nature and circumstances of the offense," as well as the need "to protect the public from further crimes of the defendant" and the "need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. §§ 3553(a)(1), (a)(2)(C), (a)(6).

Defendant led a violent narcotics-distribution organization, which distributed hundreds of kilograms of crack cocaine and murdered multiple individuals. PSR ¶¶ 26, 36-37, 44. Williams himself distributed five kilograms of crack cocaine, murdered

-18-

three individuals, and attempted to escape from custody. Id. ¶¶ 36-37, 43, 45, 112-115. Prior to the federal indictment which led to Williams' current incarceration, Williams was incarcerated for possession of 28 vials of crack, a loaded Smith & Wesson revolver, and a loaded Raven Arms .25 caliber semi-automatic pistol. Id. ¶¶ 109-10. Defendant is, simply put, "a grave threat to society." Id. at 33. Both "the nature and circumstances of the offense," as well as the need "to protect the public from further crimes of the defendant" counsel against the defendant's release. 18 U.S.C. §§ 3553(a)(1), (a)(2)(C).

Reducing Williams' sentence would be a disproportional remedy, given the sentences imposed on "defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. §§ 3553(a)(6). Williams' minimum sentence is life, PSR at 32; 18 U.S.C. § 1959(a)(1), and he has effectively served less than the mandatory minimum sentences for far fewer and less heinous crimes. If the Court were to grant his motion for compassionate release now, it would materially alter the sentence imposed. See United States v. Kantor, 853 F. App'x 723, 726 (2d Cir. 2021) ("[C]ourts regularly consider how compassionate release would alter the aims of the original sentence. . . . That inquiry often involves assessing the proportion of the defendant's stated sentence yet to be served.").

In addition to considering proportionality generally, reducing Williams' sentence would be disproportional to his co-defendants.  Williams' father and uncle, who were indicted for their roles in the violent Torres Organization, were also sentenced to life.  ECF Nos. 197, 198.

## CONCLUSION

Having concluded that Williams is not entitled to a reduction of his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A), the motion is denied, and the Clerk of the Court is directed to terminate the motion pending at ECF No. 396.

Dated:    December 16, 2024
          New York, New York

_____
    NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE